UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

ANTOINETTE HODGSON, a/k/a "Dina,"

               Defendant.

------------------------------------X

10 Cr. 818-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

      On September 14, 2010, Antoinette Hodgson, a/k/a "Dina," ("Hodgson" or "Defendant") pleaded guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of wire fraud, in violation of 18 U.S.C. § 1343.  For the reasons set forth below, Hodgson will be sentenced to 51 months' imprisonment to be followed by three years' supervised release.  Hodgson will be required to forfeit property in the amount of at least $45,000,000, as well as to pay restitution in an amount to be determined and a special assessment of $200.

**Prior Proceedings**

On September 14, 2010, Information 10 CR 818-01 (RWS) was filed in the Southern District of New York. Count One charges that from 2006 through January 2009, in the Southern District of New York and elsewhere, Hodgson and others conspired to commit wire fraud, in violation of 18 U.S.C. § 1349. Count Two charges that in 2008, in the Southern District of New York and elsewhere, Hodgson unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, caused investors to wire $2,800,000 from accounts at JP Morgan Chase in New York, New York, to an account at Bank of America in New Jersey for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. § 1343.

On September 14, 2010, Hodgson appeared before the Honorable Ronald L. Ellis in the Southern District of New York and allocuted to her criminal conduct as charged, in accordance with a plea agreement.

On November 30, 2010, the Court received a letter from

Hodgson's counsel requesting that Court be lenient when imposing a sentence in light of Hodgson's family background and personal characteristics.

Hodgsons's sentencing is currently scheduled for December 6, 2010.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)  the need for the sentence imposed —

        (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)  to afford adequate deterrence to criminal conduct;

        (C)  to protect the public from further crimes of

>            the defendant; and
>
>       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for —
>
>       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)),

and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") and the letter submitted by Hodgson's counsel with respect to Hodgson's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

The following facts were obtained by a special agent of the FBI and are based upon, among other things, information obtained from various sources, witness, law enforcement agents, documents furnished by investors, and a review of bank records and data provided by Hodgson.

During the course of the instant offense, Hodgson was the owner of "Antoinette Hodgson & Company," a member of "Hodgson Holding, LLC," and the President of "Sabrina Hodgson, Inc." (collectively referred to as the "Hodgson Companies").

From 2006 through December 2009, Hodgson executed a Ponzi scheme, in which she solicited approximately $45,000,000 from various investors using false representations that she would use the money to purchase and/or renovate residential real estate properties, which she was planning to re-sell to third-party buyers, or maintain and rent out for a period of time before selling.  Hodgson promised investors high rates of return on their investments — Hodgson promised to repay the investors their principal investment plus interest or returns ranging between 10 and 30 percent, over periods of time ranging from as little as a few months to one year — which she represented would be generated by profits from her successful real estate business.  These rates of return were often memorialized in documents called "promissory notes" or "mortgage notes."

In furtherance of the scheme to defraud, between 2006 and 2009, Hodgson represented to numerous investors that she was an expert at purchasing foreclosed residential properties in New

Jersey, and that she renovated and then resold the properties at a profit. Hodgson told some investors that she had special access to foreclosure listings before they were made public, based on "contacts" that she purportedly had at real estate companies and banks. Additionally, Hodgson falsely represented to certain investors that her business model posed little risk because she often had buyers lined up to purchase the properties from her before she had even purchase them, thereby enabling her to offer quick, significant and safe returns for her investors. Hodgson falsely represented to other investors that she owned approximately 70 residential properties; that she received monthly rental income of approximately $65,000 from these properties; and that she had a net worth of approximately $40,000,000. To bolster her false representations, Hodgson drove certain investors around various neighborhoods in New Jersey and pointed to properties that she allegedly owned.

Hodgson misappropriated the funds obtained from investors: Hodgson paid back the promised returns and/or interest payments due on the notes to various investors using other investors' money and, when she was unable to pay back the principal, asked investors to "rollover" the notes or re-invest the principal amount of their investment in further real estate

7

investment opportunities. As a result, Hodgson was able to delay paying particular investors the amounts promised until she was able to solicit additional funds from existing or new investors. Most of the $45,000,000 that Hodgson received from investors, either directly or indirectly through the Hodgson Companies, was used to repay monies owed to existing investors; and some of the investors' money was used to enrich Hodgson and her family members.

In some instances, Hodgson targeted certain investors for millions of dollars in additional investments by falsely representing to them that she needed large sums of money to fund a substantial real estate project or projects. Based upon these and other representations, Hodgson received approximately $25,000,000 in funds from investors in 2008 and 2009. However, there were no such real estate projects available to Hodgson, as she knew, and the money she succeeded in soliciting from investors was immediately used to repay other investors. Additionally and contrary to Hodgson's representations, her real estate business as not successful. Between 2006 and 2009, Hodgson purchased approximately 15 residential properties in New Jersey for a combined purchase price of less than $6,000,000, many of which are mortgaged to commercial banks and other

8

lenders. Additionally, during the same time period, Hodgson sold a small number of properties for a profit of approximately $700,000.

A number of the investors who invested with Hodgson were persons who were members of investment companies headquartered in New York, NY. Hodgson attended meetings with investors in New York, NY, at which she made many of the fraudulent representations described above. Additionally, many investors wired money to Hodgson through accounts in New York, NY.

Based upon a review of bank records for accounts in the name of or controlled by Hodgson and accounts controlled by the attorney acting for Hodgson in real estate transactions (collective, the "Hodgson Accounts"), as well as certain account records for various investors, the case agent learned that between 2006 and 2009, investors wired or otherwise deposited more than approximately $45,000,000 into the Hodgson Accounts. During 2009 alone, investors wired or deposited approximately $19,000,000 into the Hodgson Accounts. Additionally, during the aforementioned time period, approximately $43,000,000 was paid out of the Hodgson Accounts to investors. On countless

9

occasions, monies received into the Hodgson Accounts from investors were immediately paid out to other investors. Furthermore, Hodgson diverted more than $700,000 to an investment in a Dunkin Donuts franchise in Arizona during 2008. Hodgson also made counter withdrawals exceeding $200,000 at Trump Casinos in Atlantic City, NJ, and Las Vegas, NV, between 2006 and 2009.

The case agent was subsequently able to identify more than 20 victim investors, who transferred money to the Hodgson Accounts. All of the victims believed that they were providing money to Hodgson for the purposes of real estate investments, but were actually defrauded as a result of Hodgson's false representations.

Following on-going investigation, a criminal complaint was filed in the Southern District of New York on June 14, 2010. Hodgson voluntarily surrendered to authorities two days later, on June 16, 2010.

According to information provided by the Government, Hodgson is responsible for actual losses known to date amounting to between $2,500,000 and $7,000,000, suffered by more than 20

victims, as a result of her criminal conduct. The Government has stated that these figures are still in the process of being determined and could ultimately amount to as much as $20,000,000.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. §§ 1343 and 1349, the maximum term of imprisonment is 20 years per count.

If a sentence of imprisonment is imposed, a term of supervised release of no more than three years may be imposed, pursuant to 18 U.S.C. §§ 3583(b)(2) and 3624(e).

Defendant is eligible for not less than one nor more than five years' probation, pursuant to 18 U.S.C. §§ 3561(c)(1) and 3564(b).

The maximum fine that may be imposed is at least $14,000,000 per count or twice the gross loss estimated to date, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

Full restitution to the victims is required under 18 U.S.C. §§ 3663A and 3664.

Pursuant to 18 U.S.C. § 1963(a)(1), (a)(2) and (a)(3), Defendant shall forfeit to the United States a sum representing all property, real and personal, involved in the instant offense or traceable to such property, including at least $45,000,000 in U.S. currency.

**The Guidelines**

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Because one count charges a conspiracy and the other charges a substantive offense that was the sole object of the conspiracy, pursuant to § 3D1.2(d), the counts are combined into a single group.

The Guideline for the violation of 18 U.S.C. §§ 1343 and 1349 is found in § 2B1.1, which provides for a base offense level of 7, pursuant to § 2B1.1(a)(1).

Because the actual loss involved in the offense for which Hodgson is currently accountable amounts to between $2,500,000 and $7,000,000, an 18-level increase in the offense level is warranted, pursuant to § 2B1.1(b)(1)(J).

Because the offense involved 10 or more victims, a two-level increase in the offense level is warranted, pursuant to § 2B1.1(b)(2)(A)(i).

Based on her plea allocution, Defendant has shown recognition of her responsibility for the offense.  Pursuant to § 3E1.1(a), the offense is reduced two levels.  Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 24.

Defendant has no prior criminal convictions warranting any criminal history points. Therefore she has zero criminal history points and her Criminal History Category is I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 24 and a Criminal History Category of I, the Guidelines range for imprisonment is 51 to 63 months.

The Guidelines range for a term of supervised release is at least two years but not more than three years, unless a sentence of imprisonment of one year or less is imposed, in which case a term of supervised release is not required but is optional, pursuant to §§ 5D1.2(a)(2) and 5D1.1(b).

Because the applicable Guidelines range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note 2.

The fine range for the instant offenses is $10,000 to $28,000,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court

shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Upon consideration of all of the relevant factors, including Hodgson's family background and personal characteristics, it is concluded that the imposition of a Guidelines sentence is warranted.

**The Sentence**

For the instant offenses, Hodgson will be sentenced to

15

51 months' imprisonment and three years' supervised release.

Hodgson is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence her term of supervised release. It is recommended that Hodgson be supervised by the district of her residence.

As mandatory conditions of her supervised release, Hodgson shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant shall participate in an alcohol aftercare treatment program under a co-payment plan, which may include testing via breathalyzer at the direction and discretion of the probation officer.

(3) Defendant shall participate in a mental health program approved by the U.S. Probation Office. Defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. Defendant shall contribute to the costs of services rendered not covered by third-party payment, if Defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

(4) Defendant shall provide the probation officer with access to any requested financial information.

(5) Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Defendant is in compliance with the installment payment schedule.

Defendant shall pay restitution, in an amount to be

determined. The Government has advised that the victims, many of whom have filed civil lawsuits against Hodgson, will be required to comply with a subpoena to substantiate their losses before a finding can be made by the Court with respect to restitution. Pursuant to 18 U.S.C. § 3664, the Government has 90 days following the date of sentence to provide the Court with full information concerning the victims and amount of restitution owed to each victim by Defendant.

If Defendant is engaged in a BOP non-UNICOR program, she shall pay $25 per quarter toward the criminal financial penalties. If she participates in the BOP's UNICOR program as a grade 1 through 4, she shall pay 50% of her monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11. The balance of the restitution shall be paid in monthly installments of 15% of gross monthly income over a period of supervision to commence 30 days after the date of Defendant's release from custody. Defendant shall notify the United States Attorney for this District within 30 days of any change of mailing address or residence address that occurs while any portion of the restitution remains unpaid.

In light of the significant forfeiture order and amount of restitution which has yet to be determined, and based on Defendant's current financial condition, it does not appear that Defendant is able to pay a fine, and so the fine in this case shall be waived. A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

Defendant shall forfeit to the United States her interest in all property constituting or derived from any proceeds obtained directly or indirectly as a result of the offenses, including but not limited to at least $45,000,000 in U.S. currency.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 6, 2010.

It is so ordered.

**New York, NY**
**December 3, 2010**

ROBERT W. SWEET
U.S.D.J.