```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,                       10 Cr. 818(RWS)

                                                    OPINION
       -against-


ANTOINETTE HODGSON, a/k/a "DINA"

                Defendant.

------------------------------------------X

A P P E A R A N C E S:


            Attorneys for the Government

            PREET BHARARA
            United States Attorney for the
            Southern District of New York
            One St. Andrew's Plaza
            New York, New York  10007
            By:  David I. Miller, Esq.


            Pro Se
            JOSEPH DIFALCO
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/12

1

**Sweet, D.J.**

Petitioner, pro se, Joseph DiFalco ("DiFalco" or the "Petitioner") has moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for clarification, modification or dismissal of the Final Order of Forfeiture, the Stipulation and Order of Settlement entered on June 8, 2011 (the "Settlement Stipulation"), and the Order of Vacatur entered on June 7, 2011 (the "Vacatur Order") which partially vacated the Consent Order of Forfeiture entered on September 14, 2010 (the "Consent Order") with respect to certain real property.

Based upon the facts and conclusions set forth below, the motion is denied.

**Prior Proceedings and Facts**

The following facts are drawn from the parties' affidavits and are not in dispute except as noted below.

On September 14, 2010, the Defendant Antoinette Hodgson ("Hodgson" or the "Defendant") pled guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of wire fraud, in violation of 18 U.S.C. §

2

1343. See United States v. Hodgson, No. 10-818-01(RWS), 2010 WL 4942226 (S.D.N.Y. Dec. 3, 2010). A Preliminary Order of Forfeiture was entered in connection with Hodgson's guilty plea, and she was required to forfeit property in amount of at least $45,000,000, which she had solicited while executing a Ponzi scheme. Id. at *6. A number of properties were subsequently forfeited to the United States Government.

On November 2, 2010, notice of the forfeiture of the assets was published on the website of the United States. On January 10, 2011, the Government sent a written notice to a number of the victims of Hodgson's scheme directing them to file a petition pursuant to 21 U.S.C. § 851(n). The notice stated:

> Should you wish to assert a legal interest in the property which has been ordered forfeited to the United States, a petition for a hearing to adjudicate the validity of you(r) alleged interest in the property must be filed within thirty-five days of the date of this letter.
>
> The deadline for filing petitions under this notice is February 14, 2011. (FRCP 32.2(b)(6)).

Two petitions were filed before the deadline. On December 15, 2010, DiFalco filed a timely petition claiming an interest in twelve of the forfeited properties in New Jersey. CCJ Global Trading, LLC ("CCJ"), which has submitted a

3

memorandum of law in support of DiFalco's motion, also filed a timely petition claiming an interest in six forfeited properties on January 19, 2011. DiFalco's and CCJ's claims overlap as to two locations, 5 Grant Street and 33 N. Willow. DiFalco and CCJ requested an ancillary hearing on their petitions. In addition, a petition filed by Gary Goodman and Adrienne Goodman (the "Goodmans") was untimely. JPMorgan Chase, as successor to Washington Mutual Bank, N.A., did not file a petition.

On February 14, 2011, the Government wrote to the Court requesting an Order authorizing the U.S. Marshals Service ("USMS") to collect rental payments from tenants from some of the forfeited properties. In addition, the Government's letter stated that:

> The Government intends to compromise petitions filed by bona fide purchaser for value who have secured interests in the Subject Properties and transfer the defendant's forfeited interests in the Subject Properties to those who have filed mortgages on the Subject Properties.
>
> If the Government is unable to compromise a petition and transfer the defendant's forfeited interest in any of the Subject Properties to the applicable mortgage holders – ie., if there are competing mortgage holders who are unable to agree as to which mortgage holder nay particular property should be transferred – then the Government will seek to vacate the forfeiture order with respect to that particular property. Accordingly, in this case, the Government will either

4

be transferring the defendant's interest in the
Subject Properties to filed mortgage holders or will
be seeking to vacate the defendant's forfeiture with
respect to that particular property.  Consequently, no
ancillary hearing pursuant to 21 U.S.C § 853(n) will
be necessary concerning the Subject Properties, and
the Government has so notified the current petitioners
in this action.

This Court treated the Government's letter as a motion, to be heard on submission.  On March 5, 2011, the Court granted the Government's request and authorized the USMS to collect rent from the tenants residing on the forfeited properties.

According to DiFalco and CCJ, the Government refused to conduct the ancillary hearing because it was "unnecessary" as they were the only parties that had filed timely petitions.  The Government relayed that DiFalco and CCJ were the only victims of the Ponzi scheme that had filed petitions.  On February 20, 2011, the Government stated that it would to release to CCJ and DiFalco, those properties that they had interests in, free and clear of any other liens or encumbrances, including the mortgages held by JPMorgan Chase and the Goodmans, once DiFalco and CCJ resolved any conflicting claims between them.

By March 14, 2011, DiFalco and CCJ agreed that the forfeited properties would be divided so that DiFalco would take sole possession of eleven properties and CCJ would take sole possession of five properties, with the Government taking sole possession of the remaining forfeited properties.

Before the Government submitted the final settlement to the Court, two other parties attempted to file petitions, including the Goodmans and Mortgage Electronic Systems Inc. ("MERS"). According to DiFalco, both petitions were filed after the last day for filing, February 14, 2011, and therefore untimely. In addition, in May 2011, JPMorgan Chase's interest in the properties had not yet been extinguished by the Government.

On June 3, 2011, CCJ and DiFalco executed the Settlement Stipulation, which listed the properties involved and transferred certain Government interests to CCJ and DiFalco, but also required them to withdraw their petitions as to certain properties. According to CCJ and DiFalco, they had no choice but to sign the Settlement Stipulation because the Government would have otherwise vacated the Order of Forfeiture as to all of the properties.

On June 7 and 8, 2011, the Government submitted to the Court several orders including the Final Order of Forfeiture, the Stipulation Settlement, and the Vacatur Order. According to DiFalco, the Government's submission contained erroneous statements that there were multiple parties claiming an interest in the forfeited properties. In addition, he contends that the Government deprived him of a right to an ancillary hearing, which was the sole and exclusive means by which he and CCJ could establish their interests in the forfeited property. DiFalco argues that the Government's refusal to extinguish the interests of the third parties, the Goodmans and JPMorgan Chase in the properties was prejudicial to himself and CCJ.

The instant motion was marked fully submitted and heard on April 25, 2012.

**The Applicable Standard**

Rule 60(b) of the Federal Rules of Civil Procedure provides that a district court may relieve a party from a final judgment or order in five enumerated circumstances and for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)-(6). "Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only

7

upon a showing of exceptional circumstances." <u>Mendell In Behalf of Viacom, Inc. v. Gollust</u>, 900 F.2d 724, 731 (2d Cir. 1990) (citing <u>Nemaizer v. Baker</u>, 793 F.2d 58, 61 (2d Cir. 1986)); <u>see also</u> <u>Canale v. Manco Power Sports, LLC</u>, No. 06-6131, 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010) ("Motions for relief under Rule 60(b) are disfavored, and are reserved for exceptional cases."); <u>Hoffenberg v. United States</u>, No. 00-1686, 2010 WL 1685558, at *4 (S.D.N.Y. Apr. 26, 2010) ("Relief under Rule 60(b) is only warranted if the [party] presents 'highly convincing' evidence that demonstrates 'extraordinary circumstances' justifying relief.") (citation omitted).

"The Second Circuit has set forth a three-prong test in order for a Rule 60(b) motion to succeed: (1) there must be highly convincing evidence in support of the motion; (2) the moving party must show good cause for failing to act sooner; and (3) the moving party must show that granting the motion will not impose an undue hardship on any party." <u>Esposito v. New York</u>, No. 07-11612(SAS), 2010 WL 4261396, at *2 (S.D.N.Y. Oct. 25, 2010) (citing <u>Kotlicky v. U.S. Fid. Guar. Co.</u>, 817 F.2d 6,9 (2d Cir. 1987)). "The heavy burden for securing relief from final judgments applies to pro se litigants as well as those represented by counsel." <u>Broadway v. City of N.Y.</u>, No. 96-2798(RPP), 2003 WL 21209635, at *3 (S.D.N.Y. May 21, 2003).

In addressing the present motion, the Court is mindful that the Petitioner is proceeding pro se and that his submissions are held to "less stringent standards than formal pleadings drafted by lawyers . . ." Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). The courts "construe the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments they suggest." Fuller v. Armstrong, 204 Fed. App'x. 987, 988 (2d Cir. 2006); see also Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most pro se plaintiffs lack familiarity with the formalities of pleading requirements, we must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel."). However, the courts will not "excuse frivolous or vexatious filings by pro se litigants," Iwachiw v. N .Y. State Dep't of Motor Vehicles, 396 F.3d 525, 529 n.1 (2d Cir. 2005), and "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

**Rule 60(b) is Inapplicable**

The Petitioner has not made a colorable argument that any of the provisions of Rule 60(b) of the Federal Rules of Civil Procedure apply to this case, and therefore he is procedurally barred from the relief he seeks under the rule. In his motion, DiFalco admits that he was aware of the settlement terms, was in frequent contact with the Government and the United States' Attorney's Office during the ancillary proceeding, asked numerous questions about the settlement, and voluntarily signed the Settlement Stipulation.

Moreover, even construing the Complaint liberally, the Petitioner has not pled facts demonstrating fraud, misrepresentation, misconduct, newly-discovered evidence, mistake or surprise in the resolution to the ancillary proceeding. See Fed. R. Civ. P. 60(b). Rule 60(b) is therefore inapplicable to the instant motion.

**The Petitioner Lacks Standing**

One of the challenges made by the Petitioner concerns the allegedly untimely petitions filed in this case by the

10

Goodmans and MERS, the Government's consideration of them, and the Court's Final Order of Forfeiture, which noted the filing of those petitions. Besides now being challenged a year after the filing of those petitions, the Petitioner lacks standing to challenge the timeliness of other third-party petitions in an ancillary proceeding. Only the Government may move to dismiss or strike a petition on timeliness grounds and a court may reject or strike such petitions, even without a government motion. See 21 U.S.C. § 853(n).

Here, the Government did not move to dismiss the Goodmans or MERS petitions due to the efforts made to reach a global resolution as to the forfeited properties with those that had filed mortgage interests. No authority has been cited to establish the inappropriateness under 21 U.S.C. § 853 of the Government's consideration of the late-filed petitions.

Similarly, the Petitioner has no standing to contest the Government's application to vacate part of the Consent Order of Forfeiture. A third party in an ancillary proceeding does not have standing to contest the entry of a preliminary order of forfeiture, its recourse is to file a petition under 21 U.S.C. § 853(n). See Fed. R. Crim. P. 32.2(b)(2); United States v. Kozeny, No. 05-518(SAS), 2011 WL 1672473, at *3 (S.D.N.Y. Apr.

11

29, 2011) (stating that a "court must enter the preliminary order of forfeiture 'without regard to any third party's interest in the property.'") (citing Fed. R. Crim. P. 32.2(b)); United States v. BCCI Holding (Luxembourg) S.A., 795 F. Supp. 477, 490 (D.D.C. 1992) (finding that a third party lacks standing to object to entry of order of forfeiture and recourse is to file petition in ancillary proceeding.).

Because a court may amend a preliminary or consent order on the Government's motion, see Fed. R. Crim. P. 32.2(e), a third party does not have standing to object to the vacatur of that forfeiture order or any part thereof. See United States v. Cone, 627 F.3d 1356, 1359 (11th Cir. 2010) ("When, on the government's motion, the district court vacated the preliminary orders of forfeiture, the ancillary forfeiture proceeding ended – along with [third party's] right to be temporarily involved in some way in this criminal case."); United States v. Cone, No. 06-CR-43-T-24, 2009 WL 2163106, at *5 (M.D. Fla. July 18, 2009) (stating that a third party has no standing to object to a government motion to amend a preliminary order of forfeiture to eliminate subject properties; "[a] claimant's standing under § 853 to adjudicate their interest in forfeited property does not equate to standing to object to a motion to vacate a provision in a [preliminary order of forefeiture]"). Accordingly, the

12

Petitioner has no standing to contest the entry of the June 7, 2011 Vacatur Order.

**The Settlement Stipulation is Controlling**

The Petitioner signed the Settlement Stipulation in this action, and thereby agreed and consented to the transfer of the subject properties following entry of the Final Order of Forfeiture. Thus, the Petitioner will be held to the agreement's clear and unambiguous terms. See United States v. Herman, No. 03-3316(RMB), 2005 WL 66894, at **4-5 (S.D.N.Y. Jan. 12, 2005) (granting the Government's motion for summary judgment on a settlement agreement concerning forfeiture and the disgorgement of proceeds by holding the party to the terms of the settlement agreement.).

Paragraph 11 of the Settlement Stipulation explicitly provided that the signatory parties "waive[d] any and all rights to appeal or otherwise to challenge or contest the validity of this Stipulation and Order of Settlement." (Settlement Stipulation at 13). Had the Settlement Stipulation not been signed, the Government has expressed that it would have requested that the Court vacate the Consent Order of Forfeiture as to all the properties in which DiFalco had a purported

13

interest. There were several properties for which an agreement was not reached and as a result, the Government requested this Court to vacate the Consent Order of Forfeiture as to those particular properties.

In addition, when DiFalco signed the Settlement Stipulation, he was aware that he was not going to receive the properties listed in his instant motion because the Settlement Stipulation did not cover them. Under the Settlement Stipulation, DiFalco only received an interest in two units of property, which includes Units 1F and 2F at 5 Grant Street in Montclair, New Jersey. As to those properties, the Settlement Stipulation clearly and unambiguously provided that "[t]he Government's right, title, and interest in 5 Grant Street, shall be transferred to DiFalco after the entry of the Final Order of Forfeiture. This transfer shall be subject to any recorded liens, mortgages, and lis pendens and the terms and conditions of the Final Order of Forfeiture." (Id. at 10). The Petitioner's challenge to the Settlement Stipulation fails as a matter of contract and forfeiture law.

The Government also entered into the Settlement Stipulation in an effort to assist the parties by facilitating the transfer of forfeited property to the Petitioner. Most of

the properties subject to the Consent Order of Forfeiture were in dispute among various victims of Hodgson's scheme, including the Petitioner.  Consequently, the Government, which could have moved to vacate the Forfeiture Order with respect to the disputed properties at any time, was under no obligation to enter into any settlement regarding any of the properties forfeited from the Defendant.  The Government advised all the parties that should a settlement agreement not be reached amongst the parties as to the disputed properties, the Government would seek to vacate the Consent Order of Forfeiture as to those properties for which there was no agreement and the parties would have to go to state court to resolve their foreclosure and priority disputes.

In its application to partially vacate the consent order, the Government set forth the reasons why it sought to vacate the forfeiture order with respect to the disputed properties:

> Subsequent to the entry of the Consent Order of Forfeiture and while investigating the liquidity of the Subject Properties, the Government learned that there is little to no equity in each of the following Subject Properties, i.e., many of the properties had mortgages and/or recorded liens on them amounting to much (if not all) of the fair market value of the property . . .

15

> Because a sale of the Encumbered Properties would generate virtually no value for the victims of the defendant's fraud, the Government endeavored to return the Encumbered Properties to the respective mortgage holders that had filed petitions in this ancillary proceeding. In the process of our investigation, however, the Government became aware the foreclosure actions had been filed in New Jersey State Court against the following Encumbered Properties . . . .

(Application for Partial Vacatur Order ¶¶ 17-18).

The Government advised the parties on several occasions that this proceeding is not the appropriate forum to settle New Jersey real property and mortgage claims. As set forth in the Application for Partial Vacatur Order, if the ancillary proceeding continued as to the disputed forfeited properties, this Court would have had to decide which mortgage holders had priority over the other, and would have turned this proceeding "into an interpleader action between private parties where neither the Government nor the Defendant has a stake in the outcome." (Id. ¶ 20).

As the Government noted in Paragraph 21 of its Application for Partial Vacatur Order, financial institutions that were mortgage holders that had not filed petitions, had filed foreclosure actions against the remaining foreclosed properties. Any resolution of those properties would

16

necessarily have included or implicated the rights of those financial institutions in a determination of priority interest. The partial vacatur of the Consent Order of Forfeiture also puts the Petitioner in the same position he was in prior to the entry of the Consent Order of Forfeiture.

Notably, while attempting to argue that the Government mischaracterized which mortgage holders would be at issue if the Court had to decide priority interests on the remaining properties, DiFalco ignores that the Government stated in its Application that the interest of those mortgage holders that are not the Petitioner's, would necessarily be implicated: "If the ancillary proceeding continues as to the Remaining Foreclosed Properties, the Court will be put in the position of deciding which of the petitioners – and mortgage holders that are not petitioners – have priority over the other." (Id. ¶ 23).

Moreover, the Petitioner seeks to avoid the nature of criminal forfeiture and the purpose of an ancillary hearing under 21 U.S.C 853(n). An ancillary proceeding is held in a criminal forfeiture case where the United States contests the petitions at issue. The Government did not in 2011, contest that the Petitioner and CCJ have a legal interest and legitimate forfeiture claims to the subject properties that were at issue

17

and does not take such a position in its opposition to the instant motion. "This, of course is not the purpose of a forfeiture ancillary proceeding in a criminal prosecution." (Id.). The appropriate venue for all such claims is in the New Jersey state courts, which, at the time of the Settlement Stipulation, were already handling several previously filed claims.

The Government, then and now, always agreed that there was no need to litigate their claims. In its February 14, 2011 letter to the Court, the Government stated that an ancillary hearing between the Government on one side and the Petitioner and CCJ on the other, was unnecessary because the Government was not contesting their claims. The issue was, and is, the existence of other valid claims as to the same properties.

Once additional petitions were filed in this matter, the Government informed the Petitioner and CCJ that it could not convey to them the properties free of liens or other encumbrances. Before these additional petitions were even filed, the Government noted in its February 14, 2011 letter to the Court that it had concerns about conveying property subject to encumbrances. These concerns were also conveyed to the Petitioner and CCJ once the additional petitions were filed and

18

the Government became aware of the additional liens and interests.

The Petitioner appears to seek to have this Court compel the Government to forfeit property without substantial equity and challenge the valid liens or mortgages of other third parties. The pending motion seeks to inappropriately circumvent the appropriate state proceeding and the Settlement Stipulation which was knowingly and voluntarily executed by the Petitioner, to jump ahead of several other mortgage holders to secure the properties at issue. Should the Petitioner and CCJ require relief, they must litigate their claims in state court with the other filed mortgage and lienholders.

**Conclusion**

Based on the facts and conclusions set forth above, the Petitioner's motion is denied in its entirety.

It is so ordered.

**New York, NY**
**August 7, 2012**

_____
ROBERT W. SWEET
U.S.D.J.